# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

ALTON SCOTT MOODY                                                    PETITIONER

v.                                  NO. 5:15-cv-00355 BSM/PSH

WENDY KELLEY, Director of the                                        RESPONDENT
Arkansas Department of Correction

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United

States District Judge Brian S. Miller. You may file written objections to all or part of this

Recommendation. If you do so, those objections must: (1) specifically explain the factual

and/or legal basis for your objection, and (2) be received by the Clerk of this Court

within fourteen (14) days of this Recommendation. By not objecting, you may waive the

right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

I. <u>STATE PROCEEDINGS</u>. Arkansas State Police Trooper Stephen Briggs ("Briggs") was inside a Valero convenience store in Little Rock, Arkansas, purchasing a drink when he happened to overhear a man on a cell phone say that the man had lost $3,200.00. The Arkansas Court of Appeals found that the following then occurred:

> … The man [unidentified at that time] also asked, "what was he supposed to do, go back and get his dope." Briggs bought his drink and went back to his vehicle, and based on what he had overheard, he decided to watch the man, who subsequently went outside and got into a white Cadillac DeVille.
>
> At some point thereafter, a maroon Nissan pickup truck pulled up and parked on the passenger side of the Cadillac. [Footnote omitted]. The driver of the Nissan got out and met with the man in the Cadillac. The two men went to the trunk of the Cadillac and leaned down into the vehicle, and Briggs then saw the driver of the Nissan-later identified as Moody-place something in his back left pocket. Both men walked to the driver's side of the Nissan. Trooper Briggs and Officer Matthew Blasingame, who was also on the scene, approached the two men. Blasingame saw, in plain view on the driver's seat of the Nissan, a clear plastic baggie containing two more clear plastic baggies in which there was a white crystallized substance. Blasingame suspected the white substance was methamphetamine. After Blasingame made this observation, Briggs then made contact with both men, advised that he was law enforcement, and told them to get on the ground. Blasingame seized the white substance and turned it over to Briggs.

<u>See</u> <u>Moody v. State</u>, 2014 Ark. App. 618, 446 S.W.3d 652, 653 (2014). Petitioner Alton Scott Moody ("Moody") was subsequently convicted of one count of possession of methamphetamine with intent to deliver and two counts of possession of drug paraphernalia. He was sentenced to the custody of respondent Wendy Kelley ("Kelley").

Moody appealed his conviction. On appeal, he maintained that the state trial court erred when it denied his motion to suppress. He maintained that "the investigating and arresting officers did not have reasonable suspicion … [Moody] was involved in the commission of a felony." See Id. at 654. Moody also alleged that "the officers made a warrantless arrest without probable cause and, because there was no probable cause for his arrest, the resulting search was illegal." See Id. The state Court of Appeals found, though, that reasonable cause existed to believe Moody had committed a felony, and the warrantless arrest was justified. The state Court of Appeals found that the state trial court did not err when it refused to suppress the evidence seized as a result of his arrest.

Moody thereafter filed a state trial court petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In the petition, he challenged the state Court of Appeals' adjudication of his Fourth Amendment claim on direct appeal and challenged his attorney's representation at trial and on appeal. The petition was denied when it was determined that the petition did not conform to the length requirements of the Arkansas rules of appellate procedure. See Document 1 at CM/ECF 13-14.

Moody appealed the denial of his petition. He tendered the record, but the appellate court clerk refused to lodge it because Moody's notice of appeal was untimely. Moody filed a motion for rule on the clerk. The Arkansas Supreme Court denied the motion and dismissed his appeal after it found that his notice of appeal was indeed untimely. See Moody v. State, 2015 Ark. 337, — S.W.3d —, 2015 WL 5635281 (2015).

II. <u>FEDERAL PROCEEDINGS</u>. Moody commenced the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254 and joining Kelley. Liberally construing Moody's <u>pro se</u> petition, he appears to advance the following claims:

1) Moody's Fourth Amendment right was violated when he was arrested and evidence seized without probable cause, and the state Court of Appeals made an erroneous adjudication of those claims on direct appeal;

2) Moody's appellate attorney was ineffective because counsel failed to ask the state Supreme Court to review the state Court of Appeals' decision on direct appeal;

3) Moody's trial attorney was ineffective because counsel failed to adequately prepare for, and cross examine a key witness in connection with, a motion to suppress;

4) Moody's trial attorney was ineffective because he failed to call Moody and Wendell Prince ("Prince") as witnesses in connection with a motion to suppress;

5) Moody's trial attorney was ineffective because he failed to obtain surveillance video of Moody's arrest and search and failed to offer the video as evidence in connection with a motion to suppress;

6) Moody's trial attorney was ineffective because he did not advise Moody of a plea bargain and did not urge him to accept it;

7) Moody's trial attorney was ineffective because he failed to raise an alleged violation of Moody's right to a speedy trial; and

8) Moody's trial attorney was ineffective because he failed to object to the prosecution's leading questions during the motion to suppress portion of the trial.

Kelley filed a response to the petition. In the response, she maintained that the petition should be dismissed because Moody's claims are barred by Stone v. Powell, 428 U.S. 465 (1976); are procedurally barred from federal court review; or otherwise have no merit.

Moody was accorded an opportunity to submit a reply to Kelley's representations. He submitted nothing in reply, and the deadline for doing so has now passed.

III. FOURTH AMENDMENT CLAIMS. Moody first maintains that his Fourth Amendment rights were violated when he was arrested without probable cause and evidence was improperly seized following his illegal arrest. He additionally maintains that the state Court of Appeals made an erroneous adjudication of his Fourth Amendment claims on direct appeal when the state appellate court found he was only arrested after the police officers had reason to believe criminal activity had occurred. Moody's Fourth Amendment claims warrant no relief for two reasons.

First, federal court review of the claims is precluded by Stone v. Powell, which provides that Fourth Amendment claims are not cognizable in a habeas corpus proceeding if the State afforded the petitioner a full and fair opportunity to litigate them.[1] The State of Arkansas afforded Moody a full and fair opportunity to litigate his claims, and he took advantage of that opportunity. His efforts were simply unsuccessful as both the state trial court and the state Court of Appeals rejected the claims.

---

[1]

There are two instances in which a Fourth Amendment claim may be cognizable in a habeas corpus proceeding, see Willett v. Lockhart, 37 F.3d 1265 (8th Cir. 1994), but the instances are not applicable.

Second, the state Court of Appeals rejected Moody's challenge to his arrest and the resulting search, and the adjudication of those claims is entitled to deference and is adopted by the undersigned.[2] The adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. 2254(d). The facts as found by the state Court of Appeals establish that there was probable cause for Moody's arrest and search.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS. Moody's remaining claims involve the representation afforded him by his attorney. Moody's claims are governed by Strickland v. Washington, 466 U.S. 668 (1984), which requires a two-part showing. He must first show that counsel's performance fell below an objective standard of reasonableness. See White v. Dingle, 757 F.3d 750 (8th Cir. 2014). Moody must also show prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the trial would have been different. See Id.

---

[2]

The undersigned will not reproduce the state Court of Appeal's full adjudication of the claims, save to note the following findings made by the appellate court:

… Moody's vehicle was parked in a public parking lot. Blasingame lawfully approached the vehicle and observed the plastic baggies containing a white crystalline substance on the front seat of Moody's truck, and he testified that he saw the methamphetamine before Briggs ordered Moody to the ground. While this testimony came during the trial, and after the hearing on the motion to suppress, this court may rely on trial testimony to affirm the circuit court's suppression ruling. … At the point that Blasingame observed methamphetamine in Moody's vehicle, reasonable cause existed to believe that Moody had committed a felony. Accordingly, the warrantless arrest was justified, and the circuit court did not err in refusing to suppress the evidence seized as a result of the arrest.

See Moody v. State, 446 S.W.3d at 654.

Kelley maintains that Moody's claims of ineffective assistance of counsel are procedurally barred from federal court review. Rather than enter the morass of the procedural bar issue, the undersigned will simply reach the merits of his claims.

A. Moody maintains that his appellate attorney was ineffective because counsel failed to ask the state Supreme Court to review the state Court of Appeals' decision on direct appeal. Moody's claim warrants no relief for two reasons.

First, Moody has not shown that an appeal from the state Court of Appeals to the state Supreme Court was possible. Specifically, he has failed to show that this case involved one of the limited circumstances in which discretionary review by the state Supreme Court was possible.[3]

Second, Moody can show no prejudice. He cannot show that the result of his direct appeal would have been different had the state Supreme Court reviewed the state Court of Appeals' decision. The state Court of Appeals' adjudication of his direct appeal was reasonable and has support in the record.

---

[3]

The state Supreme Court will review the decision of the state Court of Appeals in the following limited circumstances: 1) the case was decided in the state Court of Appeals by a tie vote, 2) the state Court of Appeals rendered a decision which is in conflict with a prior holding of a published opinion of either the state Supreme Court or the state Court of Appeals, or 3) the state Court of Appeals otherwise erred with respect to one of the grounds listed in Arkansas Supreme Court Rule 1-2(b). See Parmley v. Norris, 586 F.3d 1066 (8th Cir. 2009). Rule 1-2(b) lists six grounds the state Supreme Court will consider in determining the re-assignment of a case: A) issues of first impression; B) issues upon which there is a perceived inconsistency in the decisions of the state Court of Appeals or state Supreme Court; C) issues involving federal constitutional interpretation; D) issues of substantial public interest; E) significant issues needing clarification or development of the law or overruling of precedent; and F) appeals involving substantial questions of law concerning the validity, construction, or interpretation of an act of the General Assembly, ordinance of a municipality or county, or a rule or regulation of any court, administrative agency, or regulatory body. See Id.

B. Moody maintains that his trial attorney was ineffective because of the manner in which counsel prepared for, and presented, a motion to suppress.[4] Specifically, in claims three, four, five, and eight, Moody maintains that counsel failed to cross examine Matthew Blasingame ("Blasingame"), one of the arresting officers; failed to call Moody and Prince as witnesses; failed to obtain surveillance video of Moody's arrest and the resulting search; and failed to object to the prosecution's leading questions. Moody's claims warrant no relief for a number of reasons.

First, Moody's attorney cross examined Blasingame in connection with the motion to suppress. See Document 8, Exhibit A at Bates No. 70-72, 83. It is true that counsel's cross examination of Blasingame was limited to two questions, but the questions dealt with the critical issue: what the police officers saw before Moody was arrested. Moody has also not shown what evidence would have been learned had counsel conducted a longer cross examination of Blasingame in connection with the motion.

---

[4]

Moody's motion to suppress arose in a somewhat unusual context. Moody waived a jury trial and proceeded to a trial by the court. See Document 8, Exhibit A at Bates No. 35. It was only after the trial began that Moody's attorney made an oral motion to suppress. See Document 8, Exhibit A at Bates No. 72-73. It was counsel's position that there was no suspicious activity warranting Moody's arrest, specifically noting that "[b]arring a phone call made from some time earlier, an hour, two hours, four hours, five hours, there's nothing suspicious about [Moody's] activity at all." See Document 8, Exhibit A at Bates No. 72-73. Briggs testified, though, that he approached Moody not to arrest him but to identify the individuals gathered around the vehicles and "investigate what was going on." See Document 8, Exhibit A at Bates No. 76. Briggs testified that immediately upon approaching the vehicles, he saw what he believed to be illegal drugs and arrested Moody and Prince. See Document 8, Exhibit A at Bates No. 77. The state trial court took the motion under advisement and proceeded with the trial. See Document 8, Exhibit A at Bates No. 73. After hearing more of the evidence but before the close of the prosecution's case-in-chief, the state trial court denied the motion. See Document 8, Exhibit A at Bates No. 83-89. At the close of the prosecution's case-in-chief, Moody's attorney renewed the motion. See Document 8, Exhibit A at Bates No. 154-156. The state trial court denied the renewed motion, and the trial continued. See Document 8, Exhibit A at Bates No. 157.

Second, Moody's attorney cross examined Blasingame during the prosecution's case-in-chief, <u>see</u> Document 8, Exhibit A at Bates No. 102-107, and the state Court of Appeals adjudicated Moody's Fourth Amendment claims on the basis of all the testimony, not just the evidence adduced in connection with the motion to suppress. Any failure on counsel's part to conduct a longer cross examination of Blasingame in connection with the motion had no affect on the state Court of Appeals' adjudication of Moody's Fourth Amendment claims.

Third, although it is true that Moody and Prince were not called to testify during the period the state trial court was considering the motion to suppress, Moody has not offered a proffer of their testimony. The undersigned can only guess as to how they would have testified. Assuming they would have testified consistent with their trial testimony, <u>see</u> Document 8, Exhibit A at Bates No. 152-183, the undersigned again notes that the state Court of Appeals adjudicated Moody's Fourth Amendment claims on the basis of all the testimony, not just the evidence adduced in connection with the motion to suppress. Any failure on counsel's part to call Moody and Prince to testify in connection with the motion had no affect on the state Court of Appeals' adjudication of Moody's Fourth Amendment claims as the testimony appears to have been considered.

Fourth, although it is true that counsel did not obtain surveillance video of Moody's arrest and the resulting search, it is not clear whether such evidence exists. Moreover, Moody has not provided a proffer of what he believes the video would show or how the video would have affected the outcome of this case.

Fifth, Moody has not identified the leading questions he believes to have been a violation of his due process rights. In his state trial court petition for post-conviction relief, though, he noted that the prosecution "led both officer[s] in … saying it was a drug deal …" <u>See</u> Document 8, Exhibit E, Petition for Post-Conviction Relief at 10. The undersigned has reviewed the prosecution's questioning of Briggs and Blasingame. <u>See</u> Document 8, Exhibit A at Bates No. 74-83. The undersigned can find no question that was so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the proceeding and failed to afford him the fundamental fairness which is the essence of due process. <u>See</u> <u>Maggitt v. Wyrick</u>, 533 F.2d 383 (8th Cir. 1976).

Sixth, assuming that counsel erred as Moody alleges, Moody can show no prejudice. The state trial court and state Court of Appeals made reasonable adjudications of his Fourth Amendment claims, and their adjudications have support in the record.

C. Moody next maintains his trial attorney was ineffective because counsel did not advise Moody of a plea bargain of ten years imprisonment and did not urge him to accept the plea bargain. Moody's claim warrants no relief for two reasons.

First, assuming Moody was indeed offered a plea bargain, there is no evidence counsel withheld the offer. In fact, Moody's state trial court petition for post-conviction relief indicates that he was apprised of the offer. He specifically noted in the petition that counsel "fail[ed] to have Moody accept the [ten] year sentence offered …" <u>See</u> Document 8, Exhibit E, Petition for Post-Conviction Relief at 9.

Second, Moody has offered no authority for the proposition that defense counsel

has a constitutionally mandated obligation to compel his client to accept a plea bargain. The decision to accept a plea bargain is solely in the hands of the client, in this instance Moody.

D. Moody last maintains his trial attorney was ineffective because counsel failed to raise an alleged violation of Moody's right to a speedy trial. His claim warrants no relief. It is true that more than a year elapsed between his arrest and trial. The length of the delay, though, was not great; Moody requested and obtained several continuances; and he cannot show that he was prejudiced by the delay.[5] Thus, it cannot be said that counsel erred.

"There is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." See Amrine v. Bowersox, 238 F.3d 1023, 1030 (8th Cir. 2001). Moody has failed to show that his attorney's representation fell outside the wide range of professionally reasonable assistance and sound strategy. Moody has offered few facts to support his assertions that counsel's performance was deficient. To the extent Moody has alleged any facts, they do not establish the requisite prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the trial would have been different.

V. RECOMMENDATION. For the foregoing reasons, the undersigned finds that

---

[5]

Four factors are to be considered in evaluating an alleged violation of a defendant's right to a speedy trial. The factors are: 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of his speedy trial right, and 4) prejudice to the defendant. See Barker v. Wingo, 407 U.S. 514 (1972).

Moody's claims warrant no relief. It is therefore recommended that his petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases In The United States District Courts, a certificate of appealability should also be denied.

DATED this 14th day of March, 2016.


_____
UNITED STATES MAGISTRATE JUDGE